**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| STATE EX. REL., NORTHERN OHIO | ) CASE NO. 1:07 CV 02329 |
| CHAPTER OF ASSOCIATED BUILDERS & | ) |
| CONTRACTORS, INC., *et al.,* | ) JUDGE DAN AARON POLSTER |
| | ) |
| -and- | ) |
| | ) |
| THE BLACK CONTRACTORS GROUP | ) |
| P.O. Box 202225 | ) |
| Cleveland, OH 44120 | ) **THIRD AMENDED VERIFIED** |
| | ) **COMPLAINT AND REQUEST FOR** |
| Plaintiffs, | ) **DECLARATORY AND** |
| | ) **INJUNCTIVE RELIEF** |
| v. | ) |
| | ) |
| THE METROHEALTH SYSTEM, *et al.,* | ) |
| | ) |
| Defendants. | ) |

Plaintiffs, The Northern Ohio Chapter of Associated Builders & Contractors, Inc., Taxpayer Michael Dragics, Taxpayer Industrial Energy Systems, Inc. and Town Center Construction, LLC (referred to collectively as the "Plaintiffs" or individually as "ABC," "Dragics," "IES" and "Town Center"), by and through their undersigned counsel, hereby file this Verified Third Complaint and Request for Declaratory and Injunctive Relief ("Complaint") against the above named Defendants and state as follows:

**Jurisdiction**

1.      This is a Complaint for injunctive and declaratory relief.  This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 2201.  The rights sought to be secured in this action arise under 42 U.S.C. § 1983, 42 U.S.C. §

1988, 29 U.S.C. § 151 *et. seq*., and the United States Constitution, including but not limited to, Article VI, Clause 2.  Plaintiffs further seek to vindicate their due process and equal protection rights guaranteed by the Fourteenth Amendment to the United States Constitution.

2.     This Court has supplemental jurisdiction over the Ohio Law Claims and Ohio State Law Taxpayers and Constitutional claims alleged herein pursuant to 28 U.S.C. § 1367.

## Venue

3.     Venue is proper within the Federal District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 1391(b) as all parties to this action reside or conduct business within Cuyahoga County, Ohio, and further the unlawful conduct and the actions complained of herein have occurred within Cuyahoga County and within the jurisdiction of this Court.

## Nature of the Controversy

4.     The focus of this Complaint concerns a series of unlawful Project Labor Agreements (hereinafter collectively referred to as "PLA" or "the PLAs") entered into by Defendants, The MetroHealth System, The MetroHealth System Board of Trustees, and the Cuyahoga County Board of Commissioners (referred to collectively as the "Defendants") with the Cleveland Building and Construction Trades Council and various constituent labor organizations and Resolution #050501, dated February 3, 2005, wherein the Cuyahoga County Board of Commissioners (hereinafter referred to as "BOCC") mandate that all successful bidders and their subcontractors on projects where the cost estimate exceeds Two Hundred Fifty Thousand Dollars ($250,000.00) shall be subject to the PLA that is an Exhibit to the Resolution which is the PLA in place on the Jail Project and in pertinent part, at Paragraphs A and B thereof has the identical unlawful requirement as the MetroHealth Projects PLAs.

5.      These unlawful PLAs were included in the contracts for the construction of two roof replacement projects at The MetroHealth System, namely, the Combined Hamann and Bell Greve/CT Roof and HVAC Replacement Projects (formerly known as the "Hamann and Bell Greve Buildings Roof Replacement Capital Construction Project" which has been bid on twice) and the MetroHealth South Campus Geriatric Roof Replacement Capital Construction Project and one project involving three separate prime contracts for the Cuyahoga County Board of Commissioners, namely the Cuyahoga County Jail I Third Floor Housing Project (referred to collectively as the "Projects" and separately as "the MetroHealth Project" and "the Jail Project").

6.      The operation of the PLAs at issue constitute unlawful regulation by a public entity/authority into the private collective bargaining relationship between employers and organized labor in violation of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et. seq.*, and in doing so, deprive Plaintiffs of their right to equal protection and due process under the United States Constitution.  Because the PLAs at issue are unlawful, all such construction contracts for both the MetroHealth and the three (3) prime contracts for the Jail Project must be deemed illegal and void.

7.      Plaintiffs, among other remedies alleged herein, seek to enjoin the application and enforcement of Resolution #050501 on all present and future projects and of the PLAs that Defendants are unlawfully imposing on those who bid and are awarded work on the Projects. Plaintiffs are entitled to a declaratory judgment declaring that Resolution #050501 and the PLAs are preempted by the NLRA, and entitled to an order declaring the Resolution and PLAs are invalid, void and unenforceable.  Plaintiffs also seek a preliminary and permanent injunction requiring Defendants to re-bid all work awarded by Defendants that is subject to this PLA as of the filing date of this Complaint, and such other relief as deemed appropriate.

8. This Complaint is also a Taxpayers' action seeking to enjoin the application and enforcement of the PLA and further seeks to recover pursuant to Ohio Revised Code Sections 309.12 and 309.13, any public moneys that have been or are about to be misapplied, or otherwise illegally drawn from the County Treasury pursuant to the execution of any contract deemed to be illegal or void because of the Resolution or PLAs at issue herein.  Plaintiff Taxpayers are also entitled to injunctive relief prohibiting enforcement of this unlawful PLA and a declaratory judgment preventing the award of any current or future construction contracts subject to the terms of the Resolution or the PLAs.

9. Under Ohio law, the Resolution and the PLAs are designed to preclude and have precluded non-union contractors for bidding such projects and therefore, runs afoul of the Ohio Supreme Court's decision in <u>State ex rel. United District Heating v. State Office Building Commission</u>, 125 Ohio St. 301 (1932), thereby requiring injunctive relief and declaratory judgment that the PLAs and the Resolution are unlawful, void and enforceable.

## <u>Parties Involved and Basis for Standing</u>

10. ABC is a non-profit corporation organized under the laws of the State of Ohio located at 9255 Market Place West in Broadview Heights, Ohio.

11. ABC is a trade association of over three hundred and fifty "Merit Shop" associate members and construction contractors, including contractors located in Cuyahoga County and contractors employing residents of Cuyahoga County, some of who have chosen not to affiliate with a labor union.  The "Merit Shop" philosophy as applied to public works projects stands for the proposition that construction projects should be awarded based upon merit rather than union affiliation.

12.     ABC is a local chapter of Associated Builders and Contractors, Inc., which is a national trade association of over twenty-four thousand Merit Shop construction industry associates and contractors.  The objective of ABC and its members is to provide high quality, low cost, and timely construction work, which benefits businesses, consumers and taxpayers.

13.     ABC has associational standing to bring this action as a representative of its members because its members would otherwise have standing to sue in their own right; the interests ABC seeks to protect are related to the trade association's purpose; and neither the claims asserted, nor the relief requested, requires the participation of individual members in the lawsuit.  ABC is filing this action on behalf of its individual member contractors who have been and will continue to be injured by the loss of business opportunity resulting from the enforcement of this unlawful PLA.

14.     Dragics is a resident of Cuyahoga County and the State of Ohio and has standing to bring this action pursuant Ohio Revised Code Sections 309.12 and 309.13 as a taxpayer of Cuyahoga County and the State of Ohio.

15.     IES is an Ohio corporation licensed to do business in the State of Ohio and is located in Cuyahoga County.

16.     IES is a taxpayer of Cuyahoga County and the State of Ohio and has standing to bring this action pursuant to Ohio Revised Code Sections 309.12 and 309.13.

17.     IES is also a member of ABC who has twice submitted and was the low bidder for the contract for the roof replacement contract on the Combined Hamann and Bell Greve/CT Roof and HVAC Replacement Projects (formerly known as the "Hamann and Bell Greve Buildings Roof Replacement Capital Construction Project") subject to the unlawful PLA.  IES also has standing to bring this action as the low bidder on one of the Projects.

18.     Town Center is an Ohio Limited Liability Company, licensed to do business in the state of Ohio and is located in Summit County.

19.     Town Center submitted a bid for the General Trades prime contract on the Jail Project on August 2, 2007 and was the low bidder.

20.     The Black Contractors Group (hereinafter individually referred to as "BCG") is an unincorporated association having a mailing address of P.O. Box 20225, Cleveland, Ohio 44120.

21.     BCG is a trade association consisting of approximately five hundred (500) African-American construction contractors and tradesmen, primarily located in Cuyahoga County and the vast majority of whom have chosen not to affiliate with a labor union.

22.     The BCG seeks, *inter alia*, to create and enhance business and job opportunities for its members in the public and private sector.

23.     BCG has associational standing to bring this action as a representative of its members because its members would otherwise have standing to sue in their own right; the interests BCG seeks to protect are related to the trade association's purpose; and neither the claims asserted, nor the relief requested, requires the participation of individual members in the lawsuit.  BCG is filing this action on behalf of its individual member contractors and trades who have been and will continue to be injured by the loss of business and job opportunities resulting from the enforcement of this unlawful PLA.

24.     Separate bids were solicited for the Jail Project for separate prime contracts for the Mechanical Trades (plumbing, heating, ventilating and air conditioning and fire suppression) and Electrical on August 2, 2007.

25.     Town Center and ABC both have standing to bring this action concerning the Jail Project.

26.     The MetroHealth System is a public entity/authority and a County Hospital authorized by Ohio Revised Code Sections 339.01 *et. seq.*, and is located in the City of Cleveland, County of Cuyahoga, State of Ohio.

27.     The MetroHealth System is a public entity/authority under the governance of the MetroHealth System Board of Trustees, John Does 1 through 10, and the County Cuyahoga Board of County Commissioners.  This Complaint in brought against the MetroHealth System Board of Trustees in their official capacities.

28.     The MetroHealth System receives taxpayer funds from Cuyahoga County, The State of Ohio, and the citizens of Cuyahoga County.

29.     BOCC, Jimmy Dimora, Timothy F. Hagan, and Peter Lawson Jones are authorized to create as well as appoint the MetroHealth System Board of Trustees pursuant to Ohio Revised Code Sections 339.01 *et seq.*  The County Commissioners or their designees serve *ex officio* as members of the MetroHealth System Board of Trustees.  This action is brought against the BOCC in their official capacity.

30.     BOCC and/or the MetroHealth System Board of Trustees, pursuant to Revised Code Sections 339.01 *et. seq.*, are authorized to enter into agreements to purchase, acquire, lease, appropriate, construct, improve or renovate a county hospital or hospital facilities.

31.     The MetroHealth System Board of Trustees, with or without the approval or agreement of the Cuyahoga County Board of County Commissioners, has entered into unlawful PLAs which were included in the contracts for construction of the Hamann and Bell Greve/CT

Roof and HVAC Replacement Projects and the MetroHealth South Campus Geriatric Roof Replacement Capital Construction Project for The MetroHealth System.

32.     The Cuyahoga County Board of Commissioners, Jimmy Dimora, Timothy F. Hagan and Peter Lawson Jones, pursuant to Ohio Revised Code Section 307.02 are authorized to enter into agreements to ". . . construct, enlarge, improve . . . a . . . jail . . . or ". . . other necessary buildings."

33.     The Cuyahoga County Board of Commissioners has entered into an unlawful PLA for construction at the Jail Project covering all three (3) prime contracts and has mandated by Resolution #050501, dated February 3, 2005, that all construction projects in Cuyahoga County where the cost estimate exceeds Two Hundred and Fifty Thousand Dollars ($250,000.00) are deemed appropriate for a PLA unless the County Administrator submits a written report outlining the reasons a PLA is not appropriate, which may be overturned by a majority vote of the Cuyahoga County Board of Commissioners.  (*See* Exhibit J).  The aforesaid Resolution includes the PLA as an Exhibit to the Resolution.

34.     The Cleveland Building and Construction Trades Council is a labor organization that has entered into unlawful PLAs which were included in the contracts for construction of the Hamann and Bell Greve / CT Roof and HVAC Replacement Projects and the MetroHealth South Campus Geriatric Roof Replacement Capital Construction Project for The MetroHealth System and the Jail Project.  (The aforesaid Trades Council and the labor organizations named as defendants in this case are hereinafter collectively referred to as "Defendant Unions").

35.     International Heat & Frost Insulators and Asbestos Workers Local 3 is a labor organization that has entered into unlawful PLAs which were included in the contracts for construction of the Hamann and Bell Greve / CT Roof and HVAC Replacement Projects and the

MetroHealth South Campus Geriatric Roof Replacement Capital Construction Project for The MetroHealth System and the Jail Project.

36.     The Northern Ohio Administrative District Council of Bricklayers and Allied Craftsmen, Local #5 is a labor organization that has entered into unlawful PLAs which were included in the contracts for construction of the Hamann and Bell Greve / CT Roof and HVAC Replacement Projects and the MetroHealth South Campus Geriatric Roof Replacement Capital Construction Project for The MetroHealth System and the Jail Project.

37.     The International Brotherhood of Boilermakers, Iron  Ship Builders, Blacksmiths, Forgers, and Helpers Local Lodge 744 is a labor organization that has entered into unlawful PLAs which were included in the contracts for construction of the Hamann and Bell Greve / CT Roof and HVAC Replacement Projects and the MetroHealth South Campus Geriatric Roof Replacement Capital Construction Project for The MetroHealth System and the Jail Project.

38.     The Operative Plasterers' & Cement Masons' International Association, Local 404 is a labor organization that has entered into unlawful PLAs which were included in the contracts for construction of the Hamann and Bell Greve / CT Roof and HVAC Replacement Projects and the MetroHealth South Campus Geriatric Roof Replacement Capital Construction Project for The MetroHealth System and the Jail Project.

39.     The International Union of Elevator Constructors Local 17is a labor organization that has entered into unlawful PLAs which were included in the contracts for construction of the Hamann and Bell Greve / CT Roof and HVAC Replacement Projects and the MetroHealth South Campus Geriatric Roof Replacement Capital Construction Project for The MetroHealth System and the Jail Project.

40.     The International Union of Operating Engineers, Local 18 is a labor organization that has entered into unlawful PLAs which were included in the contracts for construction of the Hamann and Bell Greve / CT Roof and HVAC Replacement Projects and the MetroHealth South Campus Geriatric Roof Replacement Capital Construction Project for The MetroHealth System and the Jail Project.

41.     The International Association of Bridge, Structural, Ornamentation, and Reinforcing Iron Workers, Local 17 is a labor organization that has entered into unlawful PLAs which were included in the contracts for construction of the Hamann and Bell Greve / CT Roof and HVAC Replacement Projects and the MetroHealth South Campus Geriatric Roof Replacement Capital Construction Project for The MetroHealth System and the Jail Project.

42.     Laborers' International Union of North America, Local 310, AFL-CIO is a labor organization that has entered into unlawful PLAs which were included in the contracts for construction of the Hamann and Bell Greve / CT Roof and HVAC Replacement Projects and the MetroHealth South Campus Geriatric Roof Replacement Capital Construction Project for The MetroHealth System and the Jail Project.

43.     Laborers' International Union of North America, Local 860, AFL-CIO is a labor organization that has entered into unlawful PLAs which were included in the contracts for construction of the Hamann and Bell Greve / CT Roof and HVAC Replacement Projects and the MetroHealth South Campus Geriatric Roof Replacement Capital Construction Project for The MetroHealth System and the Jail Project.

44.     The International Union of Painters and Allied Trades District Council 6 is a labor organization that has entered into unlawful PLAs which were included in the contracts for construction of the Hamann and Bell Greve / CT Roof and HVAC Replacement Projects and the

MetroHealth South Campus Geriatric Roof Replacement Capital Construction Project for The MetroHealth System and the Jail Project.

45.     The United Association of Journeymen and apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, Local 120 is a labor organization that has entered into unlawful PLAs which were included in the contracts for construction of the Hamann and Bell Greve / CT Roof and HVAC Replacement Projects and the MetroHealth South Campus Geriatric Roof Replacement Capital Construction Project for The MetroHealth System and the Jail Project.

46.     The Operative Plasterers' and Cement Masons' International Association of the United States and Canada, Local 80 is a labor organization that has entered into unlawful PLAs which were included in the contracts for construction of the Hamann and Bell Greve / CT Roof and HVAC Replacement Projects and the MetroHealth South Campus Geriatric Roof Replacement Capital Construction Project for The MetroHealth System and the Jail Project.

47.     The United Association of Journeymen and apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, Local 55 is a labor organization that has entered into unlawful PLAs which were included in the contracts for construction of the Hamann and Bell Greve / CT Roof and HVAC Replacement Projects and the MetroHealth South Campus Geriatric Roof Replacement Capital Construction Project for The MetroHealth System and the Jail Project.

48.     The United Union of Roofers, Waterproofers and Allied Workers, Local Union 44 is a labor organization that has entered into unlawful PLAs which were included in the contracts for construction of the Hamann and Bell Greve / CT Roof and HVAC Replacement Projects and

the MetroHealth South Campus Geriatric Roof Replacement Capital Construction Project for The MetroHealth System and the Jail Project.

49.     The Sheet Metal Workers' International Association, Local Union 33 is a labor organization that has entered into unlawful PLAs which were included in the contracts for construction of the Hamann and Bell Greve / CT Roof and HVAC Replacement Projects and the MetroHealth South Campus Geriatric Roof Replacement Capital Construction Project for The MetroHealth System and the Jail Project.

50.     The International Brotherhood of Teamsters Local Union No. 436 is a labor organization that has entered into unlawful PLAs which were included in the contracts for construction of the Hamann and Bell Greve / CT Roof and HVAC Replacement Projects and the MetroHealth South Campus Geriatric Roof Replacement Capital Construction Project for The MetroHealth System and the Jail Project.

51.     The International Brotherhood of Electrical Workers, Local Union No. 38 is a labor organization that has entered into unlawful PLAs which were included in the contracts for construction of the Hamann and Bell Greve / CT Roof and HVAC Replacement Projects and the MetroHealth South Campus Geriatric Roof Replacement Capital Construction Project for The MetroHealth System and the Jail Project.

52.     The International Union of Bricklayers and Allied Craftworkers, Local Union No. 36 is a labor organization that has entered into unlawful PLAs which were included in the contracts for construction of the Hamann and Bell Greve / CT Roof and HVAC Replacement Projects and the MetroHealth South Campus Geriatric Roof Replacement Capital Construction Project for The MetroHealth System and the Jail Project.

53.     The Ohio and Vicinity Regional Council of Carpenters, United Brotherhood of Carpenters and Joiners of America, Local 21 is a labor organization that has entered into unlawful PLAs which were included in the contracts for construction of the Hamann and Bell Greve / CT Roof and HVAC Replacement Projects and the MetroHealth South Campus Geriatric Roof Replacement Capital Construction Project for The MetroHealth System and the Jail Project.

## Relevant Facts

### A.     The MetroHealth System Projects

54.     On or about April 25, 2007, The MetroHealth System Board of Trustees adopted a Resolution dated 4-25-07 with "Addendum A" approving the advertising for bids and a PLA for the General Trades for the South Campus Geriatric Roof Replacement Capital Construction Project and the Hamman and Bell Greve/CT Roof and HVAC Replacement Projects.  (Attached hereto as "Exhibit A").

55.     "Addendum A," part of the MetroHealth System Board of Trustees' Resolution authorizing the implementation of a PLA for the roof replacement Projects explicitly provides,

> Whereas this Resolution is not intended to replace, interfere with, abrogate, diminish, or modify existing local or national collective bargaining agreements in effect during the duration of the Project, insofar as a legally binding agreement exists between the contractor(s) and the affected union(s), except to the extent the provisions of the Resolution are inconsistent with said collective bargaining agreements, in which event, the provisions of the former shall prevail…

56.     Identical PLAs were subsequently drafted and attached to bidding documents and made part of the construction contracts for both MetroHealth Projects (attached as "Exhibit B" and "Exhibit C").  These identical PLAs state in part,

> A.     The scope of this Agreement will apply to all work done in connection with the construction of the Project, including all site work and building construction for complete and occupable (sic) buildings and structures.

13

Once work is complete in a specific area on the Project, and accepted by The MetroHealth System Board of Trustees, this Agreement shall no longer be in effect for that specific area.

B.     The conditions of this Agreement shall be binding upon all Project contractors and their subcontractors (together referred to as "Employers"). The MetroHealth System Board of Trustees shall require that all work be performed by Employers who are or become bound by a collective bargaining agreement with the appropriate craft union signatory to this agreement.

57.     A plain reading of the PLA and the enabling Resolution reveals that the Defendants are requiring all successful bidders and subcontractors on the Projects to agree to be bound by terms of the PLA, which in turns requires contractors and their subcontractors to become bound by a collective bargaining agreement(s) with the appropriate craft union signatory to the PLA.

58.     The PLA applies to all work done "in connection" with the construction of the Project, including all site work and building construction for complete and occupiable buildings and structures.  Once work is complete in a specific area on the Projects and accepted by the MetroHealth Board of Trustees, the PLA provides that <u>IT</u> shall no longer be in effect for that specific area.

59.     However, the wages, hours and other terms or conditions of employment mandated by the underlying collective bargaining agreement(s) the Defendants required each contractor and subcontractor to become bound to through the operation of the PLA are applicable to all other private and/or public construction projects that contractors or subcontractors are currently performing during the time span of the PLA.

60.     Furthermore, although the PLA itself terminates upon the completion of work in a specific area of the Projects, the wages, hours and other terms or conditions of employment mandated by the underlying collective bargaining agreement(s) the Defendants require each

14

contractor and subcontractor to become bound to through operation of the PLA do <u>NOT</u> terminate.

61.     Thus, the Defendants, through operation of this PLA, are acting as "market regulators" requiring contractors and subcontractors to become bound by the terms and conditions of various collective bargaining agreement(s) with applicable craft unions signatory to the PLA without limitation.

62.     Specifically, the PLA at issue here is unlawful because (1) it contains no language limiting the scope of the underlying collective bargaining agreements only to the MetroHealth Projects, so that the collective bargaining agreements do not apply to a contractor or subcontractor's present or future work on other construction projects; and (2) the PLA lacks any language which would terminate the underlying collective bargaining agreement(s) a contractor or subcontractor was required to sign upon the termination of the PLA.

63.     PLAs are constitutional and permitted only if the PLA is a "project only agreement."  In order to have a valid "project only agreement," the underlying collective bargaining agreements must be <u>explicitly</u> limited to the scope of the specific project, and then only for the lifetime of that particular project.

64.     This PLA requires contractors and their subcontractors, through the terms of the underlying collective bargaining agreements, to become signatory to craft unions during and beyond the duration of the MetroHealth Projects.  As such, the PLA requires a contractor to become bound by the terms of the underlying collective bargaining agreements on present and future work not contemplated within the scope of the Projects.

65.     As such, the PLA entered into by the Defendants runs afoul of the United States Supreme Court's decision in *Building and Constructions Trades Counsel v. Associated Builders*

*& Contractors* (1993), 507 U.S. 218; 113 S. Ct. 1190; 122 L. Ed. 2d 565 (commonly known as "*Boston Harbor*") and is pre-empted by the National Labor Relations Act ("NLRA").

### B.    Status of MetroHealth Contracts

66.    Bids were due for the MetroHealth South Campus Geriatric Roof Replacement Capital Construction Project on or about May 11, 2007.

67.    On June 8, 2007, a taxpayer letter was sent by Plaintiffs ABC, IES and Dragics pursuant to Ohio Revised Code Sections 309.12 and 309.13 to the Cuyahoga County Prosecutor's Office and to William West, General Counsel for The MetroHealth System, requesting both to take actions to restrain the MetroHealth Board of Trustees from entering into an unlawful PLA or to prevent them from awarding any contract for construction containing said unlawful PLA.

68.    No response to this June 8, 2007 taxpayer letter was received from MetroHealth or from the Cuyahoga County Prosecutor's Office until a phone call with MetroHealth's outside legal counsel on July 9, 2007.  (A letter memorializing this conversation is attached as "Exhibit D").

69.    Through this conversation with MetroHealth's outside legal counsel, it was discovered that despite the taxpayers request to enjoin the award of any contract containing this unlawful PLA, the contract for the South Campus Geriatric Roof Replacement Project had been awarded to Building Technicians and work on the Project had commenced.

70.    As outside legal counsel for The MetroHealth System informed Plaintiffs ABC, IES and Dragics, the work on the South Campus Roof Replacement was 20% complete as of July 9, 2007.  (See "Exhibit D")

71.     On July 12, 2007, Plaintiffs ABC, IES and Dragics received a letter from the Cuyahoga County Prosecutor's Office refusing to institute a civil action to restrain The MetroHealth System Board of Trustees from entering into or proceeding with the contract for the Hamann and Bell Greve Buildings Roof Replacement Capital Construction Project, (currently known and out for bid as the "Hamman and Bell Greve/CT Roof and HVAC Replacement Projects") that contained the unlawful PLA.  (Attached as "Exhibit E").

72.     To be in compliance with Revised Code Sections 339.12 and 339.13, a second taxpayer letter was sent to the Cuyahoga County Prosecutor's Office regarding the same illegal PLA as it specifically applied to the South Campus Geriatric Roof Replacement Project that was awarded to Building Technicians.   (Attached as "Exhibit F").   This act was in vain as the Cuyahoga County Prosecutor's Office made it clear it intended not to act to restrain The MetroHealth System Board of Trustees from implementing these unlawful PLAs.

73.     The first bids for the Hamann and Bell Greve Buildings Roof Replacement Capital Construction Project, currently known as the Hamman and Bell Greve/CT Roof and HVAC Replacement Projects, were opened on or about May 11, 2007.  Plaintiff Industrial Energy Systems, Inc. was the lowest bidder for this Project.

74.     However, after notifying the Architect for MetroHealth that Plaintiff IES would not enter into the unlawful PLA attached to the contract for the Project, MetroHealth decided to re-bid the Hamann and Bell Greve Buildings Roof Replacement Capital Construction Project.

75.     The Hamann and Bell Greve Buildings Roof Replacement Capital Construction Project was set for re-bid with the same unlawful PLA that Plaintiff Industrial Energy Systems, Inc. had informed MetroHealth's Architect was illegal the first time.

76.     On July 16, 2007, bids were opened a second time for the Hamann and Bell Greve Buildings Roof Replacement Capital Construction Project.  For a second time, IES was the lowest bidder for the Project.

77.     Immediately after the bids were opened, Plaintiff IES sent the Board of Cuyahoga County Commissioners a letter alleging the PLA attached to the contract for construction of the Hamann and Bell Greve Buildings Roof Replacement Capital Construction Project was unlawful, and IES would not be a party to an illegal PLA.  (Attached as "Exhibit G").

78.     On July 19, 2007, Plaintiff IES received a letter from Jack Applegate, Director of Construction Management for The MetroHealth System returning Industrial Energy Systems' bid bond and rejecting all bids for the Project for a second time.   (Letter from MetroHealth is attached as "Exhibit H").

79.     July 25, 2007, the Plaintiffs sent the Cuyahoga County Prosecutor and outside Legal Counsel for The MetroHealth System a letter informing them that the Taxpayers would file the instant lawsuit if the Hamann and Bell Greve Buildings Roof Replacement Capital Construction Project was set for bid a third time containing the same unlawful PLA discussed herein.  (Attached as "Exhibit I").

80.     On July 30, 2007, the Hamann and Bell Greve Buildings Roof Replacement Capital Construction Project was put out for bid a third time by Defendants but the name of the Project was changed to the "Combined Hamman and Bell Greve/CT Roof and HVAC Replacement Projects."  For a third time, the bid documents contained the same unlawful PLA that was included with the first two bids for the Project.

81.     On several occasions representatives of the BCG have met with representatives of Defendant MetroHealth and objected to the implementation of a PLA since, among other things,

18

BCG's contractor and tradesmen members are non-union and as such, they are effectively precluded from bidding work covered by a PLA.

### C. The Jail Project

82.     On February 3, 2005, by unanimous vote, Resolution #050501 was passed, to become effective April 1, 2005, establishing the County's Project Labor Program for capital construction projects in the following circumstances:

> WHEREAS, the BOCC [Cuyahoga County Board of Commissioners] believes that the benefits of requiring successful bidders to adhere to conditions in this Resolution are most appropriate where the cost estimate exceeds two hundred fifty thousand dollars ($250,000.00).

Further, the body of the Resolution directs the County Administrator or his/her designee in connection with all projects in excess of the two hundred fifty thousand dollar ($250,000.00) limit to meet with representatives of the building trades to evaluate whether to negotiate a Project Labor Agreement and if the same be deemed appropriate, execute the PLA with the Cleveland Building and Construction Trades Council and appropriate unions and include the same in the appropriate bidding documents for the effected project.

83.     Attached to the Resolution as an Exhibit is a document captioned "Project Labor Agreement for Cuyahoga County, Cleveland, Ohio" which sets forth the form that PLAs shall take in Cuyahoga County.

84.     The language of the Cuyahoga County PLA pursuant to the County's Project Labor Program set forth in the Exhibit is identical to the PLAs on the Jail Project and MetroHealth projects with regard to the requirement that all employers not only must sign the PLA but ". . . become bound by a collective bargaining agreement with the appropriate craft union signatory to this Agreement."

19

85.     A plain reading of the Resolution establishing the County's Project Labor Program and the PLA exhibited thereto reveals that the BOCC is requiring that all successful bidders and subcontractors on all projects in excess of two hundred fifty thousand dollars ($250,000.00) to be constructed in Cuyahoga County must agree to be bound by not only the terms of the PLA, but requires contractors and their subcontractors to become bound by collective bargaining agreements with the appropriate craft union signatory to the PLA.

86.     Beginning on July 2, 2007 and weekly thereafter through July 23, 2007, the BOCC advertised for bid the Cuyahoga County Jail I Third Floor Housing Project, requiring in the Notice to Bidders published that bids be deposited by 2:00 p.m. on Thursday, August 2, 2007.

87.     Included in the project documents is the PLA (Exhibit J).  The PLA on the Jail Project is the identical PLA that was the Exhibit to Resolution #050501, dated February 3, 2005, and is unchanged in any respect.

88.     The specifications for the General Trades prime contract on the Jail Project include, but are not limited to, demolition work; concrete work; masonry work; structural steel framing; carpentry; insulation; glass and glazing work; painting; and laborers work.  The specifications for the Mechanical Trades prime contract include plumbing; fire suppression; heating, ventilating and air conditioning installation.  The specification also provide a separate prime Electrical contract.  All the aforesaid separate prime contracts require the execution of the County's boilerplate PLA.

89.      Town Center's low bid for the General Trades prime contract was rejected for failure to meet the participation requirements of the Small Business Enterprise (hereinafter "SBE") and on August 8, 2007, Envirocom Construction, Inc. was verbally awarded the job.

90.     Town Center solicited bids from every contractor on the BOCC approved SBE list of contractors.  Town Center was unable to secure sufficient bids from the list of SBE approved contractors because the "listed contracts" advised that they would not agree to become signatory to the PLA.

91.     Representatives of the BCG have appeared at public meetings of the BOCC and objected to the implementation of a PLA since, among other things, BCG's contractor and tradesmen members are non-union and as such, they are effectively precluded from bidding work covered by a PLA.

92.     The wages, hours and other terms or conditions of employment set forth in the underlying collective bargaining agreement that the BOCC mandated each contractor and subcontractor to be bound to through the operation of the PLA are applicable to all public and/or private construction projects that contractors or subcontractors are currently performing during the time span of the Jail Project PLA.

93.     Furthermore, although the PLA itself terminates upon completion of work at the Jail Project, the wages, hours and other terms or conditions of employment set forth in the underlying collective bargaining agreements that the BOCC mandated each contractor or subcontractor to become bound to through the operation of the Jail Project PLA do <u>NOT</u> terminate.

94.     Thus, the BOCC, through operation of the Jail Project PLA, are acting as market regulators by mandating that contractors and their subcontractors become bound by the terms and conditions of various collective bargaining agreements with applicable craft unions signatory to the PLA without any limitation.

95.     Specifically, the Jail Project PLA and the Resolution at issue herein is unlawful because:  (1) neither contain any language limiting the scope of the underlying collective bargaining agreements, only to the Jail Project so that the collective bargaining agreements do not apply to a contractor's or subcontractor's present or future work on other construction projects; and (2) the Resolution and the PLA lack any language which would terminate the underlying collective bargaining agreements a contractor or subcontractor is required to sign upon termination of the Jail Project PLA.

96.     PLAs are constitutional and permitted only if the PLA is a "project only agreement."  In order to have a valid "project only agreement," the underlying collective bargaining agreements must be explicitly limited to the scope of the specific project and then only for the lifetime of that particular project.  The Resolution and the Jail Project PLA requires contractors and their subcontractors through the terms of the underlying collective bargaining agreements to become signatory to craft unions during and beyond the duration of the Jail Project.

97.     In light of the Resolution mandating that any construction projects where the cost estimate exceeds two hundred fifty thousand dollars ($250,000.00) will be subject to the PLA that is the Exhibit to Resolution #050501, which provides at Paragraph B thereof that:  "The Board shall require that all work be performed by Employers who are or become bound by a collective bargaining agreement with the appropriate craft union signatory to this Agreement" and the identical PLA and identical language offensive to federal and state law, just quoted, appears in the Jail Project PLA, the BOCC has resolved to adopt a course of action on all construction projects, including the Jail Project, which runs afoul of the United States Supreme Court decision in Building and Construction Trades Council v. Associated Builders &

Contractors (1993), 507 U.S. 218; 113 S.Ct. 1190; 122 L.Ed. 2d 565 (commonly known as "Boston Harbor") and is preempted by the National Labor Relations Act.

## FEDERAL CLAIMS

### Count I Violation of the NRLA and Preemption

98.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 97 of this Complaint.

99.     The United States Constitution explicitly provides for the preemption of certain state laws.  Article VI, Clause 2, provides that the "Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the . . . Laws of any State to the contrary notwithstanding."  Where Congress has created legislation to regulate or to leave unregulated certain activities, such federal legislation generally preempts any state legislation to the contrary.

100.    The NLRA acts to protect certain rights of labor and management against governmental interference.

101.    These rights include, but are not limited to, the right to be free from government regulation and interference in the collective bargaining process regarding wages, hours and other terms or conditions of employment on present and future public and private work/projects.

102.    Present and future wages, hours and other terms or conditions of employment on public and private work/projects are to be negotiated and determined by the "free play of economic forces" between management and labor through the collective bargaining process.

103.    Defendants' PLAs and Resolution #050501 mandating the unlawful terms of PLAs for all contracts in excess of two hundred fifty thousand dollars ($250,000.00) by requiring all contractors and subcontractors who are successful bidders on the Projects at issue to become

bound by the terms of a collective bargaining agreement, which is not limited in time or scope, and instead applies to all present and future work/projects is preempted by 29 U.S.C. § 151 and runs afoul of the U.S. Supreme Court's decision in *Building and Constructions Trades Counsel v. Associated Builders & Contractors* (1993), 507 U.S. 218; 113 S. Ct. 1190; 122 L. Ed. 2d 565 (commonly known as "*Boston Harbor*").

104.    Defendants have unlawfully interfered with the rights of Plaintiffs, IES, Town Center, ABC contractor members and employees thereof, and BCG and tradesmen members thereof by enacting this PLA so as to restrain them in the exercise of their lawful rights and will continue to do so in view of the unlawful mandate of Resolution #050501 establishing the County's Project Labor Program.

105.    Plaintiffs IES, Town Center, ABC contractor members and employees thereof, and BCG and tradesmen members thereof have no adequate remedy at law and have suffered, and will continue to suffer, irreparable harm from these PLAs and future PLAs mandated by Resolution #050501 by having been deprived of the protections established by the NLRA.

106.    The PLAs and Resolution #050501 mandating the County's Project Labor Program are designed to preclude non-union bidders in violation of state and federal law.

107.    In light of the County's unlawful policy mandating its Project Labor Program regardless of whether any of the individual projects mentioned in this Complaint proceed, the imposition of the boilerplate PLA made a part of the Resolution is capable of repetition and may evade review.

108.    Plaintiffs are entitled to a judgment declaring that the Resolution and these PLAs are preempted by the NLRA, and entitled to an order enjoining the Defendants and Defendant Unions from enforcing these PLAs, or otherwise declaring the PLAs to be invalid, unlawful, void

and unenforceable and enjoining the BOCC from imposing the mandates of its Project Labor Program under the Resolution on all present and future projects.

### Count II 42 U.S.C. § 1983 Due Process

109.    Plaintiffs incorporate by reference the allegations of set forth in Paragraphs 1 through 108 of this Complaint.

110.    42 U.S.C. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . . ."

111.    The PLAs and the Resolution constitutes a deprivation of rights, privileges and immunities secured by the United States Constitution, federal law and state law.  Town Center and numerous ABC contractors, including IES, are ready, willing, and able to bid and/or perform construction services on the Projects at issue.  Because of the unreasonable and unlawful requirements/restrictions contained in the Resolution and the PLAs and imposed by the Defendants, Plaintiffs have been denied an opportunity to obtain work at The MetroHealth System, the Jail Project, and under the Resolution, all Cuyahoga County projects in excess of two hundred thousand dollars ($250,000.00).

112.    The Defendants, acting under color of law, has in violation of 42 U.S.C. § 1983, deprived Town Center, IES and the contractors ABC represents and employees thereof of their rights, privileges and immunities secured by federal and state law, with the result that they have been injured forcing ABC to incur attorneys' fees to protect their rights.

## Count III Declaratory Judgment

113.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 112 of this Complaint.

114.     Plaintiffs are entitled to a declaration under 28 U.S.C. § 2201 of the rights, duties, and responsibilities of ABC contractor members, BCG contractors and tradesmen, taxpayers and Defendants arising from the MetroHealth System Board of Trustees' mandate of two unlawful PLAs incorporated into the construction contracts for the Projects and arising from PLAs incorporated into the Jail Project and upon all projects that are or may be covered by the Resolution that the same are in violation of federal labor law, Ohio law, and the Constitution of the United States.

115.     In light of the County's unlawful policy mandating its Project Labor Program regardless of whether any of the individual projects mentioned in this Complaint proceed, the imposition of the boilerplate PLA made a part of the Resolution is capable of repetition and may evade review.

116.     An actual and justiciable dispute exists between the parties for which Plaintiffs lack an adequate remedy at law and are entitled to a declaration of rights from the Court.

## Count IV Injunctive Relief

117.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 116 of this Complaint.

118.     As a result of Defendants' unlawful actions mandated by the Resolution and in requiring these PLAs, Plaintiffs' have no other adequate remedy at law, but to seek injunctive relief.  Plaintiffs ABC member contractors and BCG member contractors and tradesmen have suffered and will continue to suffer irreparable harm if an injunction does not issue.

119.     Plaintiffs possess a likelihood of success on the merits in this matter.

120.     In light of the County's unlawful policy mandating its Project Labor Program regardless of whether any of the individual projects mentioned in this Complaint proceed, the imposition of the boilerplate PLA made a part of the Resolution is capable of repetition and may evade review.

121.     Plaintiffs are entitled to injunctive relief prohibiting enforcement of these PLAs and injunctive relief preventing the award of any construction contracts subject to the terms of the unlawful PLAs, as well as injunctive relief prohibiting the implementation of the Resolution.

### Count V 42 U.S.C. § 1983 Equal Protection

122.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 121.

123.     Plaintiffs are entitled to relief under 42 U.S.C. § 1983.  Acting under color of state law, Defendants are engaging in conduct with the knowledge that such conduct would have the effect of denying Plaintiffs' Fourteenth Amendment Rights to Equal Protection.

124.     The unlawful PLAs and the Resolution at issue have the effect of discriminating against Town Center, IES and contractors or tradesmen that ABC or BCG represents in the public procurement process and will preclude the award of work at The MetroHealth System, the Jail Project, and other projects subject to the Resolution to ABC and BCG contractors as a class, because the PLAs and the Resolution were not properly drafted, i.e. limited in time and scope, in accordance with the U.S. Supreme Court's narrow confines dictated in its decision rendered in *Boston Harbor, Supra*.

125.     These PLAs and the Resolution result in unequal treatment on the basis of union affiliation and are without a rational basis in that Town Center, IES, ABC and BCG contractors

possess the requisite skill, ability, and integrity and are fully capable of providing continuous cooperative construction services required for a timely, thorough and cost-effective construction for the Projects.

126.    As a result of the continuing arbitrary, capricious and unlawful conduct of the Defendants, Plaintiffs have sustained and continue to sustain damages resulting from the violation of their Fourteenth Amendment Equal Protection Rights, with the result that they have been injured, forcing Plaintiffs to incur attorneys' fees to protect their rights.

## STATE LAW PENDANT CLAIMS

### Count VI Taxpayer Action

127.    Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 126.

128.    The Resolution and the PLAs included in the contracts for construction of the Projects at issue herein are void, unlawful and preempted by the NLRA.  Hence, the contracts for construction of the Projects are void and unlawful and any payments made to contractors by the Defendants working under such void or unlawful contracts are misappropriated funds that must be recovered by the County.

129.    Pursuant to Ohio Revised Code Section 309.12, a County Taxpayer may bring an action upon being satisfied that the funds of the County, or public money belonging to the County, or in the hands of the County Treasurer have been or are about to be misapplied, or that a contract in contravention of law has been executed, or is about to be entered into, which would result in the misapplication of County funds.

130.    Plaintiffs Michael Dragics and IES are Taxpayers residing or conducting business in Cuyahoga County, Ohio.

131.    Plaintiff Taxpayers pursuant to R.C. 309.13 sent the Cuyahoga County Prosecutor (hereinafter "the Prosecutor") a written request to investigate and institute a civil action as contemplated in R.C. 309.12 against the Defendants to restrain the execution of these unlawful contacts containing these PLAs and prevent the misapplication of County funds.

132.    After thirty days, the Prosecutor's Office sent a letter to Plaintiff Taxpayers declining to act against the PLAs and Defendants.  As a result of the Prosecuting Attorney's inaction, the Plaintiff Taxpayers have brought this action in the name of the State to recover misapplied funds for the County and to prevent the execution of illegal contracts.

133.    In light of the Prosecutor's refusal to act upon the MetroHealth Projects and based upon his statements before this Court on August 1, 2007, it would have been futile for Plaintiffs to submit the same request regarding the Jail Project or the Resolution.

134.    The Plaintiff Taxpayers request declaratory and injunctive relief against the Defendants to restrain them from entering into any contracts containing these unlawful PLAs and further seek an order from the Court to enjoin any construction project currently underway at The MetroHealth System or any projects containing the PLA mandated by the Resolution and a declaration that the policy mandated by the Resolution establishing the County's Project Labor Program is unlawful.

135.    Plaintiff Taxpayers are further entitled to injunctive relief prohibiting the enforcement of these unlawful PLAs and injunctive relief preventing the award of any construction contracts subject to the terms of the unlawful PLAs or the PLA mandated by Resolution #050501.

136.    The Plaintiff Taxpayers pray for an award of attorneys' fees and costs pursuant to R.C. 339.13 and also an order from the Court requiring the return of any misappropriated funds

to the County Treasury which were illegally expended by Defendants due to these illegal contracts for construction.

## Count VII The Ohio Constitution

137.    Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 136.

138.    Article I, §§1, 16 and 19 of the Ohio Constitution protects Plaintiffs in the enjoyment of their liberty and property including the right to engage in their lawful occupations. Plaintiffs are also entitled to equal protection under the laws of Ohio under Article I, § 2.

139.    Plaintiffs' exercise and enjoyment of their rights under the Ohio Constitution and as enunciated by the Ohio Supreme Court in United Heating District, supra, has been interfered with and denied, in that Defendants are depriving Plaintiffs of the opportunity to work on the Projects at issue absent Plaintiffs willingness to sign the unlawful PLAs and are subject to the mandates of the Resolution thereby precluding them and other non-union contractors from contracting to construct projects in Cuyahoga county subject to the aforesaid Resolution.

## Requests for Relief

WHEREFORE, Plaintiffs respectfully requests the Court to:

A.    Enter a judgment declaring that the PLAs on the Projects at issue and the Resolution are in violation of federal and state law.

B.    Enter a judgment declaring the PLAs and the Resolution are preempted by the National Labor Relations Act, 29 U.S.C. § 151 *et. seq*.

C.    Issue an order for a preliminary and permanent injunction to enjoin and restrain Defendants from requiring the execution or enforcement of the unlawful PLAs on present and future contracts for construction at The MetroHealth System and by the BOCC on the three (3)

prime contracts for the Jail Project or other projects that have been or will be in the future subjected to the unlawful mandate of the Resolution establishing the County's Project Labor Program.

      D.     Issue an order requiring the return of any misappropriated funds to the County Treasury expended by Defendants due to the illegal contracts executed for the construction of the Projects pursuant to Ohio Revised Code Sections 309.12 and 309.13.

      E.     Issue an order for preliminary and permanent injunction against Defendants requiring them to immediately stop work on all Projects containing this unlawful PLA and require Defendants to re-bid the work for the Projects without the PLA.

      F.     Issue an award attorneys' fees and costs to Plaintiffs pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, and Revised Code Sections 309.12 and 309.13.

      G.     Grant Plaintiffs such other relief as the Court may deem appropriate.

          Respectfully submitted,

          ss//Alan G. Ross
          Alan G. Ross (0011478)
          Nick A. Nykulak (0075961)
          Ross, Brittain & Schonberg Co., L.P.A.
          6000 Freedom Square Drive, Suite 540
          Cleveland, Ohio 44131
          Tel: 216-447-1551 / Fax:  216-447-1554
          Email:  Alanr@rbslaw.com

          COUNSEL FOR PLAINTIFFS