**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **STATE EX REL., NORTHERN OHIO CHAPTER OF ASSOCIATED BUILDERS & CONTRACTORS, INC., et al.,** | ) ) ) ) | **Case No. 1:07 CV 2329** |
| **Plaintiffs,** | ) ) | **Judge Dan Aaron Polster** |
| vs. | ) ) | |
| **THE METROHEALTH SYS., et al.,** | ) ) | <u>**ORDER**</u> |
| **Defendants.** | ) | |

On July 31, 2007, Plaintiffs Northern Ohio Chapter of Associated Builders & Contractors, Inc. ("ABC"), Industrial Energy Systems, Inc. ("IES"), and Michael Dragics filed a Verified Complaint and Request for Declaratory and Injunctive Relief ("Verified Complaint") against Defendants MetroHealth System and its Board of Trustees (collectively, "MetroHealth") and the Cuyahoga County Board of Commissioners (the "County Commissioners"). Plaintiff ABC is a trade association comprised of construction industry associates and union and non-union construction contractors; Plaintiff IES is a non-union contractor and a member of ABC; and Plaintiff Michael Dragics is the President of IES.

The Verified Complaint arose from advertisements for bids for substantial roof repairs on certain MetroHealth hospitals: the Combined Hamann and Bell Greve/CT Roof and

HVAC Replacement Projects ("the Combined Hamann Projects"), and the MetroHealth South Campus Geriatric Roof Replacement Capital Construction Project ("the South Campus Project") (collectively, "the roofing projects"). *ECF No. 1*. Among the bid specifications was a requirement that the successful bidder sign a Project Labor Agreement ("PLA"). The PLAs at issue required that "all work be performed by Employers who are or become bound by a collective bargaining agreement with the appropriate craft union signatory to this Agreement." Although any contractor could submit bids to work on the projects and the PLAs purportedly expired at the projects' conclusion, the language of the PLAs contained no time limit. Plaintiffs contended that the PLAs effectively required successful bidders who are not union contractors to become union contractors without limitation in time or scope to the specific project for which they submitted a bid.

IES, the low bidder on two of the advertised projects, was rejected because it refused to become signatory to the relevant collective bargaining agreements, and a new advertised project with the same PLA requirement (the Combined Hamann Projects) is pending. Because Plaintiffs believe that the PLAs unfairly discriminate against non-union contractors, they filed the Verified Complaint along with a Motion for Preliminary Injunction, *ECF No. 7*, and a Motion for Expedited Discovery, *ECF No. 9*.

Plaintiffs concede that project-specific PLAs are lawful based on the U.S. Supreme Court's 1993 decision in *Building & Constr. Trades Council of the Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218 (1993) ("Boston Harbor"). In *Boston Harbor*, the Supreme Court addressed a Massachusetts Water Authority ("the Authority") requirement that all contractors working on the Boston Harbor cleanup project must

sign a PLA recognizing a specific union as the exclusive bargaining agent for all craft employees and compelling all employees to become union members. *Id*. at 220-22. The Court noted that the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151 *et seq*., preempts state regulation of labor activities that are expressly permitted or prohibited by the NLRA, or that have been left to be controlled by the free play of economic forces. *Id*. at 226-27 (*citing, respectively, San Diego Bldg Trades Council v. Garmon*, 359U.S. 236 (1959); *Wisconsin Dept. of Industry v. Gould, Inc.*, 475 U.S. 282 (1986)). However, the Court found that the Authority's requirement was not preempted by the NLRA because the Authority, as owner of the project, was acting in its capacity as a market participant, not a market regulator. *Id*. at 232. As such, it was on the same footing as any private employer dealing with its own subcontractors and their labor force. *Id*. In arriving at its decision, the Court noted that the Authority acted on the advice of a manager hired to organize performance of a cleanup job over which the Authority was the proprietor, and observed that the challenged action was specifically tailored to the Boston Harbor cleanup job.

Based on this last ("specifically tailored") language, Plaintiffs argue that a PLA that is <u>not</u> limited in scope and duration to the project upon which a contractor is bidding runs afoul of *Boston Harbor*. Because the MetroHealth PLAs are not project-specific, Plaintiffs claim that they are preempted by the NLRA, violate the due process and equal protection clauses of the state and federal constitutions, and constitute a misapplication of public funds under Ohio law.

In the Motion for Preliminary Injunction, Plaintiffs acknowledged that Defendants would likely argue that the PLAs at issue are not preempted by the NLRA based on a decision issued by the Seventh Circuit three years after *Boston Harbor* – i.e., *Colfax Corp. v. Illinois State Toll Highway Authority*, 79 F.3d 631 (7th Cir. 1996). *ECF No. 7*, at 22. In *Colfax*,

-3-

a non-union contractor, who was low bidder on the State Highway Authority's asbestos removal project, refused to sign a PLA. *Colfax*, 79 F.3d at 632-33. Under that PLA, the Authority agreed to award contracts only to employers who were, or were willing to become, parties to areawide collective bargaining agreements with the relevant unions. *Id*. at 633. Colfax sued the Authority arguing that its PLA was preempted by the NLRA under W*isconsin Dep't of Indus. v. Gould*, 475 U.S. 282 (1986) (the NLRA preempts a statute prohibiting state purchasing agents from procuring products from entities that have violated the NLRA three times within a five-year period), rather than allowed under *Boston Harbor*. The Seventh Circuit disagreed. It determined that the case was indistinguishable from *Boston Harbor* "except as to the scope of the bargaining agreement involved," and that *Boston Harbor* left "open the door to the kind of [PLA] contemplated here." *Id.* at 634. The Seventh Circuit explained that, in the private sector, prehire agreements that were not limited to a particular jobsite were not preempted by the NLRA and were in fact authorized under § 8(e) of the NLRA, and concluded that there was no reason the Authority could not enter similar agreements. *Id*. at 635 (*citing Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645 (1982)). According to Plaintiffs, *Colfax* was wrongly decided at worst, and ambiguous at best.

Given the importance of completing the instant roofing projects before the bad weather commences, the fact that the South Campus Project is well underway and the Combined Hamann Projects have not yet begun, the case obviously warranted immediate attention. Thus, the Court held a telephone conference with counsel on August 1, 2007. It is during this teleconference that the Court first raised the question of whether the complaint presented a case or controversy, since it was unclear whether the MetroHealth PLAs went beyond the scope of the

roofing projects. At the conclusion of the conference, the Court issued an order directing Plaintiffs to file and serve an amended complaint adding the Cleveland Building and Construction Trades Council ("CBCTC") and the unions that were parties to the MetroHealth PLAs; directing the parties to confer and file an expedited discovery plan and schedule for briefing the Motion for Preliminary Injunction; and prohibiting MetroHealth from awarding any new contracts with the PLAs in question until the Court could render a decision on the merits. *ECF No. 11*. The Court also scheduled a teleconference for August 7, 2007. *ECF No. 12*.

Plaintiffs promptly filed a First Amended Complaint adding the new Defendants. *ECF No. 14*. Defendants then filed a Motion to Vacate that part of the Court's order prohibiting MetroHealth from awarding any new contracts with the subject PLA, arguing that the Court's injunction violated the Norris-LaGuardia Act, 29 U.S.C. §§ 101 *et seq. See ECF No. 33*.

At the August 7 teleconference,[1] the Court first inquired whether it was necessary to have the County Commissioners in the case since MetroHealth is an independent agency with the power to contract for capital projects, and there was nothing in the Verified Complaint or First Amended Verified Complaint that required relief against the Commissioners. There being no real objection, the Court dismissed the claims against them without prejudice. *See ECF No. 37*, at 1.

During this second teleconference, Plaintiffs made clear that they were seeking a circuit split (i.e., a Sixth Circuit decision contrary to *Colfax*) in hopes of litigating this issue to the Supreme Court. The Court, having now read and reread *Boston Harbor* and *Colfax*, noted

---

[1] Since the Court's bridge line is limited to nine participants, numerous attorneys of record chose to attend the teleconference in person.

that *Colfax* clearly held that public authorities had the same right as private entities to choose to use exclusively union contractors and employees on construction projects, and that, under *Colfax*, PLAs need not be limited to the project in question. There was apparently no Sixth Circuit case law on this issue, and no other Circuit has come to a conclusion different than the Seventh Circuit. The Court stated that since the law was stacked against Plaintiffs, it was not appropriate to enjoin temporarily the use by MetroHealth of the challenged PLA. Consequently, the Court *sua sponte* dissolved the injunction it had issued a few days earlier, and denied Defendants Motion to Vacate as moot. *ECF No. 37*, at 1-2.

The Court also noted that it had reviewed Addendum A to the MetroHealth Board's Resolution No. 15011, which authorized the MetroHealth President and CEO, John F. Sideras, to negotiate PLAs with the appropriate unions. The Court pointed out ¶ 1 of the Addendum which states that such PLAs can neither be designed nor intended "to preclude or disadvantage any prospective bidder in any way." However, the MetroHealth PLAs clearly disadvantaged non-union contractors, assuming the PLAs extended beyond the scope or duration of the project. Since Plaintiffs wanted to make this a test case, the Court wanted to ensure that the MetroHealth Board of Trustees understood that the PLAs negotiated by Sideras required successful bidders who were non-union contractors to become union contractors,[2] that the Board wanted to exercise the proprietary right that *Colfax* appeared to give it, and that the Board was prepared to litigate this to the Supreme Court, if necessary. In other words, the Court wanted to establish that there is in fact a live case or controversy to be decided. Accordingly, the Court

---

[2]The Defendant Unions were taking this position.

directed counsel for MetroHealth to file a notice no later than August 17, 2007, stating whether the Board ratified the subject PLAs. *Id*. at 2.

On August 9, 2007, Plaintiffs filed a Second Amended Verified Complaint and Request for Injunctive Relief. *ECF No. 42*. Along with repeating the original allegations concerning the MetroHealth projects, the Second Amended Verified Complaint added a new Plaintiff, Town Center Construction ("Town Center"), and contained new, independent allegations against the County Commissioners, arising from the Cuyahoga County Jail I Third Floor Housing Project ("the jail project"). *ECF No. 42*.

Attached to the Second Amended Verified Complaint is Resolution No. 050501 of the County Commissioners, effective April 1, 2005. *Id., Ex. J*. The Resolution directs the County Administrator or its designee, in connection with all construction projects in excess of $250,000, to meet with representatives of the building trades to evaluate whether to negotiate a PLA. If a PLA is deemed appropriate, the County Administrator is required to execute a PLA with the CBCTC and appropriate unions, and include the PLA in the appropriate bidding documents for the affected project. *Id*. at 2. Like MetroHealth Resolution No. 15011, the enabling language of the Commissioners' Resolution directs that any PLA negotiated by the County Administrator "must neither be designed nor intended to preclude or disadvantage any prospective bidder in any way." *Id*. at 3. Attached to the Resolution is an exhibit entitled "Project Labor Agreement for Cuyahoga County, Cleveland, Ohio." *Id*. at 4-7. The form PLA, like the roofing project PLAs and the jail project PLA, requires "that all work be performed by Employers who are or become bound by a collective bargaining agreement with the appropriate craft union signatory to this Agreement." *Id*. at 4-5. This PLA also contains no time limitation.

Town Center, the low bidder on the General Trades prime contract for the jail project, was allegedly rejected for failure to meet the County's Small Business Enterprise ("SBE") participation requirements, and Town Center lost the job to another contractor. Although Town Center solicited bids from every contractor on the County's approved SBE list, it was unable to secure sufficient bids because the listed contractors would not agree to become signatory to the PLA.

Because the jail project PLA is not project-specific, Plaintiffs also claim that it is preempted by the NLRA as it exceeds the scope of *Boston Harbor*. For the same reasons the Court required the MetroHealth Board to file a notice informing the Court whether it ratified its PLAs, the Court issued an order directing the County Commissioners to file a notice informing the Court whether it ratified the jail project PLA. *ECF No. 47*; *see, supra*, at 5-6.

Plaintiffs filed a Motion for Leave to File a Third Amended Complaint adding the Black Contractors Guild ("BCG"). *ECF No. 48*. Members of the BCG were contacted by Town Center when Town Center was putting together a bid for the jail project. Certain BCG members were precluded from submitting subcontracting bids to Town Center because they are non-union contractors unwilling to become union contractors. Accordingly, they asked Plaintiffs to be added to the case, and the Court granted Plaintiffs' Motion. *ECF No. 55*.

On August 17, 2007, the County Commissioners filed a formal response to the Court's August 14, 2007 order, stating that there is no PLA in existence between Cuyahoga County and any trade unions concerning any county construction project, including the jail project. *ECF No. 56, Ex. A, Resolution No. 073401 dated August 16, 2007, and accompanying*

*letters.* Thus, the Commissioners stated, there is no PLA for the Commissioners to ratify or not ratify. *Id*.

That same day, the MetroHealth System Board of Trustees filed its notice. *ECF No. 57*. The notice contains Resolution No. 15148, enacted by the Board on August 15, 2007. *Id., Ex. A*. The Resolution states that, after reviewing the MetroHealth PLAs and authorizing Resolution, it intended that those PLAs would be limited to the scope and duration of each roofing project. As such, the Board approved a new PLA for the Combined Hamann Projects that is unambiguously project-specific. *See ECF No. 57, Ex. C* ¶ B ("The terms and conditions of the underlying collective bargaining agreements shall apply only to the scope and for the duration of this Agreement.")

After reviewing these filings, the Court held a third teleconference on August 20, 2007. At this time, the Court informed counsel that it believed there was no case or controversy because (a) there is no PLA in existence concerning the jail project or any other county construction project, and (b) the MetroHealth Board has clarified any perceived ambiguity over whether the roofing project PLAs were intended to be project specific, and has created an amended, unambiguous project-specific PLA for the Combined Hamann Projects, which more accurately reflects its intent.

Accordingly, because the Court finds that there is no justiciable case or controversy, the case is hereby **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

   */s/ Dan Aaron Polster       August 24, 2007*
   **Dan Aaron Polster**
   **United States District Judge**

-9-